UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                         :
ALICIA SCOTT,                                                            :
                                                                         :
                                        Plaintiff,                       :
                                                                         :
                        -v-                                              :
                                                                         :
COMMISSIONER OF SOCIAL SECURITY,                                         :
                                                                         :
                                        Defendant.                       :
                                                                         :
------------------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____          │
│ DATE FILED: OCT 1 0 2013         │
└─────────────────────────────────┘
```

11 Civ. 9601 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff Alicia Scott seeks review of the decision by Defendant Commissioner of Social Security ("the Commissioner") denying her disability insurance benefits. Plaintiff claimed benefits based on, among other conditions, degenerative disc disease, arthritis of the knees, high blood pressure, and asthma. (Compl. ¶ 4, ECF No. 2; R. at 76–79, 98.) Her claims relate to the period May 8, 2009 through June 20, 2011. (Id.) The Commissioner denied her application, and an Administrative Law Judge ("ALJ") reviewing her case affirmed, on the grounds that she was not disabled under the prevailing statute during the period in question. (R. at 10–19.) Plaintiff filed this action on December 23, 2011, seeking judicial review of the ALJ's decision. (ECF No. 2.)

Now before the Court is Defendant Commissioner's unopposed motion for judgment on the pleadings. (Def.'s Mot., ECF No. 15.) For the reasons set forth below, Defendant's motion is GRANTED.

1

## I.   PROCEDURAL AND FACTUAL BACKGROUND

The Court recites here only those facts relevant to its review.[1]  This Court

reviews the ALJ's decision to determine whether there is substantial evidence to

support his determination that Plaintiff was not disabled between May 8, 2009, and

June 20, 2011.

### A.   Factual Background

Plaintiff alleges that she became disabled on May 8, 2009, and that she

suffered from radiculopathy, degenerative disc disease, pinched nerves, asthma,

arthritis, spine and knee pain, and high blood pressure.  (R. at 98.)[2]  Over the

course of six years, no fewer than nine doctors examined and treated Plaintiff.

However, the records of Plaintiff's four principal treating physicians over the two-

year claimed disability period in question consistently reflect that, notwithstanding

Plaintiff's subjective claims of suffering pain, she responded well to treatment and

was able to participate in activities of daily life.

From 2005 to 2009, prior to the claimed disability period, Dr. Steven Lee and

Dr. William Levine treated Plaintiff for arthritis, back pain, and bilateral pain.  (R.

at 135–141, 309–320.)

In May 2009, Plaintiff was laid off from her job as an administrative

assistant.  (R. at 28–29.)  She applied for disability insurance benefits on July 11,

---

[1] A thorough summary of Plaintiff's medical history is set forth in the administrative record.
[2] In her Complaint, Plaintiff alleged that her disability began in January 2006.  (Compl. ¶ 5, ECF
No. 2.)  However, under the Act, "disability" means an "inability to engage in any substantial gainful
activity."  42 U.S.C. § 432(d)(1)(A).  "The impairment must be of such severity that [the claimant] is
not only unable to do his previous work but cannot . . . engage in any other kind of substantial
gainful work . . . ."  Shaw v. Charter, 221 F.3d 126, 131–32 (2d Cir. 2000).  Plaintiff does not allege
that her condition interfered with her ability to work prior to May 2009, when she was laid off.

2009, and her claim was denied on October 9, 2009. (R. at 13.) At her May 9, 2011, hearing, Plaintiff stated that she had been having trouble performing some parts of her job, such as lifting files. (Id.) She further stated that her job required eight hours of sitting, one hour each of kneeling and crawling, and eight hours of handling, grabbing, grasping, reaching, writing, and typing, but no standing or walking. (R. at 19, 99.)

In May and June 2009, after Plaintiff was laid off, Dr. Arthur Williams examined her. He found weakness in her legs and hands and diagnosed her with degenerative lumbar disease. (R. at 146.)

Dr. Tamer Elbaz, one of Plaintiff's main treating physicians, treated Plaintiff from July 2009 to January 2011. (R. 176–84, 197–218.) On July 13 and August 4, 2009, Dr. Elbaz found Plaintiff to have a normal range of motion, pain in her lower back, normal motor strength, normal results on a toe-heel test, and normal gait. (R. at 181.) On August 4, September 15, and October 15, Dr. Elbaz administered epidural steroid injections ("ESIs"), which yielded some reduced pain and limited relief. (R. at 178, 180, 206– 207.)

Dr. Michael Correa also treated Plaintiff from September 2009 to January 2011. (R. at 255–308.) On September 18, 2009, Plaintiff reported to him that she was "unable to walk more than 2 blocks" due to "severe pain," and that her knees and legs were swelling. (R. at 266.) However, Dr. Correa found that Plaintiff was in a "good general state of health"; that she had "no weight gain or loss, no weakness, no fatigue, no fever," and "good exercise tolerance"; and that she was

3

"able to do usual activities." (Id.) Dr. Correa assessed Plaintiff as obese and referred her to a weight management clinic. (Id.)

On September 23, 2009, Dr. Brian Hamway examined Plaintiff. (R. at 185–88.) Plaintiff reported to him that she cooked and cleaned with a rolling chair, did laundry twice a week, and shopped weekly. (R. at 186.) In his record, Dr. Hamway noted that Plaintiff had a normal stance, that she used a cane though it was not medically necessary, that she needed no help changing for her exam or getting on and off the exam table, and that she was able to rise from her chair without difficulty. (R. at 186–87.) The doctor further noted that her "observed spontaneous lumbar spine movements [were] greater than evaluated movements." (R. at 187.) In fact, he found that Plaintiff had a full range of motion in her shoulders, arms, hips, knees, and ankles, normal strength in both her upper and lower extremities, and only mild limitations in bending, squatting, lifting, carrying, kneeling, and climbing. (R. at 187–88.)

Dr. Hamway diagnosed Plaintiff with back pain, asthma, and knee pain, and found no evidence of hypertension. (R. at 188.) He concluded that Plaintiff should avoid smoke, dust, and other known respiratory irritants due to possible asthma. (Id.) He also stated that Plaintiff had a mild limitation with respect to bending, squatting, lifting, carrying, kneeling, and climbing, but "no other limitations" based on her medical evaluation. (Id.) Finally, he noted that her prognosis was "good." (Id.)

4

Dr. Hamway also noted several signs of symptom amplification. (R. at 186–87.) In particular, he wrote that "light palpation of the lumbar spine results in a significant amount of pain which is disproportionate to the level of palpation, more consistent with some symptom amplification." (R. at 187.)

In November 19, 2009, Dr. Pablo Navarro, a cardiologist, treated Plaintiff and found her to be "morbidly obese." (R. at 283.) On December 9, 2009, Dr. Correa again diagnosed Plaintiff with obesity, recommended that she continue with a weight-loss program, and referred her for bariatric surgery. (R. at 263.) On February 4, 2010, Plaintiff reported to Dr. Navarro that she "[felt] much better" on Cardizem, a drug he had prescribed. (R. at 278.)

On March 10, 2010, Dr. Reiss Wojciech, who worked with Dr. Elbaz, examined Plaintiff. (R. at 201.) Plaintiff reported to Dr. Wojciech that she felt "significant relief" after receiving a bilateral lumbar diagnostic facet injection. (Id.) On March 24, 2010, Dr. Elbaz reported that Plaintiff stated that she had been "doing very well" after receiving a left-sided "RFA" procedure, which had yielded "excellent results." (R. at 198–99.) Dr. Elbaz performed a right-sided RFA. (R. at 199.)

On April 26, 2010, Dr. Elbaz completed a form report at the request of Plaintiff's representative, David B. Kennedy. In his report, Dr. Elbaz stated that Plaintiff had a "decrease in range of motions" due to a "vertebrogenic disorder." (R. at 222.) The doctor also stated that Plaintiff was to be limited to standing and/or walking for less than two hours in an eight-hour day, that she could sit for less than

four hours in an eight-hour day, and that she could never stoop, kneel, or crawl. (R. at 223.) The report failed to state, one way or the other, whether Plaintiff was "able to perform any substantial amount of sustained work activity." (Id.)

On September 3, 2010, Dr. Correa again examined Plaintiff. He assessed her with myalgia and hemorrhoids, prescribed medication, and referred her for pain management. (R. at 258.)

On November 24, 2010, Dr. Elbaz assessed lower back pain and noted that Plaintiff had excellent results after the last RFA procedure, including "75% pain relief." (R. at 215.) Dr. Elbaz then performed a left lumbar MBN diagnostic injection, which yielded "greater than 50% pain relief" (R. at 215–16.) On January 4, 2011, Dr. Correa found that Plaintiff's general state of health was "good," and discussed healthy lifestyle changes for successful weight loss with her. (R. at 256.)

On January 11, 2011, Dr. Elbaz reported that, while Plaintiff reported pain on that day, Plaintiff's RFA procedures "allowed her to have complete pain relief and enjoy all [activities of daily living]." (R. at 213.) Dr. Elbaz administered another left lumbar RFA on that day. (Id.)

In February and March 2011, Dr. Andre Sotelo, a pulmonologist, recorded his impressions of Plaintiff, which included obstructive sleep apnea, asthma, and tobacco dependence. (R. at 270.)

B.    Procedural Background

Plaintiff first applied for disability insurance benefits on July 13, 2009. (R. at 76–79.) The Commissioner denied her application on October 9, 2009. (R. at 44–

47.) ALJ Michael Friedman held a hearing on May 9, 2011. (R. at 20–40.) The ALJ considered the case de novo and, on June 20, 2011, issued a decision finding that Plaintiff was not disabled. (R. at 10–19.) On October 28, 2011, the Appeals Council denied Plaintiff's request for review. (R. at 1–4.)

On December 23, 2011, Plaintiff filed this action seeking this Court's review of the ALJ pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2010). (Compl. ¶ 1, ECF No. 2.) On July 26, 2012, Defendant moved for judgment on the pleadings. (ECF No. 14.) Plaintiff did not oppose Defendant's motion.

## II.   DISCUSSION

### A.   Standard of Review

#### 1.   Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

Even where a motion stands unopposed, the Court does not embrace default judgment principles. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004) (applied in context of summary judgment).

7

Though an unopposed motion "allow[s] the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Id. at 246 (citations and quotation marks omitted); see also Martell v. Astrue, No. 09 Civ. 1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (noting that the same standard applies in the context of a pro se unopposed Social Security benefits appeal).

"[W]hen the plaintiff proceeds pro se, as in this case, a court is obliged to construe his pleadings liberally," and interpret them as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).

### 2.    The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920; DeChirico v. Callahan, 134

8

F.3d 1177, 1179–80 (2d Cir. 1998).  The Second Circuit has described the process as

follows:

> First, the Commissioner considers whether the claimant is currently engaged
> in substantial gainful activity.  Where the claimant is not, the Commissioner
> next considers whether the claimant has a "severe impairment" that
> significantly limits her physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment that is
> listed in 20 C.F.R. Part 404, Subpart P, App. 1 ["Appendix 1"].  Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, she has the residual functional
> capacity to perform her past work.  Finally, if the claimant is unable to
> perform her past work, the burden then shifts to the Commissioner to
> determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

### 3.   Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review.

The Court may only consider whether the Commissioner has applied the correct

legal standard and whether his findings of fact are supported by substantial

evidence. When these two conditions are met, the Commissioner's decision is final.

42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)); Veino v. Barnhart, 312 F.3d 578,

586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v.

Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where

it is based upon legal error or is not supported by substantial evidence.").

If the Commissioner and ALJ's findings as to any fact are supported by

substantial evidence, then those findings are conclusive.  42 U.S.C. § 405(g); Diaz v.

Shalala, 59 F.3d 307, 312 (2d Cir. 1995).  Substantial evidence means "'more than a

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The Court must consider the record as a whole in making this determination, but it is not for this Court to decide de novo whether the plaintiff is disabled. See Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997).

The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists. See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); see also DeChirico, 134 F.3d at 1182–83 (affirming an ALJ decision where substantial evidence supported both sides).

B.    Analysis

Liberally construing the pro se submission in this proceeding, the Court considers the strongest arguments it suggests. McEachin, 357 F.3d at 200. Plaintiff challenges ALJ's two central determinations based on which he denied her disability insurance benefits. First, at step three of the five-step process laid out in 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found that that Plaintiff did not have

10

an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. (R. at 15.) Second, at step four of the process, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work in an environment that did not involve concentrated exposure to smoke, dust, or other respiratory irritants. (See R. at 16.) Thus, because Plaintiff's past work as an administrative assistant was sedentary, the ALJ found that Plaintiff was able to perform that past work. The ALJ supported each of his determinations with substantial evidence.

    1.    Listed Impairments

In order to be found disabled, a claimant must have an impairment or combination of impairments that meets or is medically equivalent to those listed in Appendix 1. See 20 C.F.R. 404.1520(d); 20 C.F.R. 404.1525–26. The ALJ found that Plaintiff had three impairments—degenerative lumbar disease, arthritis of the bilateral knees, and morbid obesity—that caused "more than minimal limitations in [her] ability to perform basic work activities" and were thus "severe." (R. at 15.) However, based on Plaintiff's doctors' diagnostic findings, the ALJ found that Plaintiff's impairments did not meet the standards in Appendix 1. The ALJ also found that Plaintiff's asthma was controlled by medication such that it was not severe, and that, while she had hypertension, there was no evidence in the record of hypertension-related symptoms, such that it was also not severe. (R. at 15.)

Substantial evidence supports the ALJ's determination. Dr. Lee and Dr. Levine treated Plaintiff for arthritis, back pain and bilateral pain over the course of

11

2005 to 2009, prior to the claimed disability period at issue. (R. at 135–141; 309–320.) However, the record after May 2009, following Plaintiff's layoff, indicates that Plaintiff responded well to treatment, was generally able to perform daily living activities, and in any event was at no point disabled for "a continuous period of less than 12 months." See 42 U.S.C. § 423(d)(1)(A).

Dr. Correa, Dr. Elbaz, Dr. Hamway, and Dr. Wojciech's records and notes constitute substantial evidence for the ALJ's findings that Plaintiff's conditions did not meet the requirements of a listed disability, despite Plaintiff's complaints of pain. In July and August 2009—shortly after being laid off—Plaintiff had generally normal results on Dr. Elbaz's tests. (R. at 181.) Similarly, in September 2009, Dr. Correa found that, while Plaintiff herself reported pain and swelling, she was in a "good general state of health" and was "able to do usual activities." (R. at 266.) Dr. Hamway's September 2009 report, consistent with Dr. Elbaz and Dr. Correa, found that Plaintiff had a full range of motion and a "good" prognosis, though he also stated that Plaintiff should avoid respiratory irritants. (R. at 188.)

Both Plaintiff and her doctors continued to report positive results from her treatments in the following year. (See, e.g., R. at 198–202, 204–05.) In March 2010, Plaintiff reported to Dr. Wojciech that she felt "significant relief" from her back-pain symptoms, and stated to Dr. Elbaz that she was doing "very well"; Dr. Elbaz himself noted "excellent results" from her RFA procedures. (R. at 198–201.) Dr. Elbaz noted that a November 2010 procedure had been very successful, causing 50% pain relief, and administered additional procedures. (R. at 215–16.) In January 2011,

Dr. Elbaz reported that Plaintiff's procedures enabled her to "have complete pain relief and enjoy all [activities of daily living]." (R. at 213.) Consistent with Dr. Elbaz's findings, Dr. Correa confirmed that Plaintiff was in a "good general state of health" and was "able to do usual activities." (R. at 256.)[3]

Thus, there is substantial evidence in the record to support the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1.

    2.   <u>Residual Functional Capacity</u>

Based on the record as described above, substantial evidence supports the ALJ's determination that Plaintiff had "the residual functional capacity to perform the full range of sedentary work, as defined in 20 C.F.R. 404.1567(a), in an environment that does not involve concentrated exposure to smoke, dust, or respiratory irritants." (R. at 16.) Specifically, substantial evidence exists that Plaintiff could "sit for up to six hours and stand or walk for up to two hours during an eight-hour day, lift and carry objects weighing a maximum of 10 pounds, and push or pull to her lifting/carrying capacity." (<u>Id.</u>)

Under the "treating physician rule," "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or

---

[3] The ALJ appropriately considered and ultimately dismissed Dr. Elbaz's April 26, 2010, report, which to some extent conflicts with his and Plaintiffs' other doctors' contemporaneous treatment notes. (<u>See infra</u> pp. 13–14.) The ALJ relied on substantial evidence to dismiss this report. (<u>Id.</u>) In any event, even if that report did constitute substantial evidence that Plaintiff was disabled, the ALJ could nonetheless find that Plaintiff was not disabled, and the Court must uphold that determination. <u>See</u> <u>Alston</u>, 904 F.2d at 126 ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); <u>see also</u> <u>DeChirico</u>, 134 F.3d at 1182–83 (affirming an ALJ decision where substantial evidence supported both sides).

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)). As outlined above, Dr. Correa, Dr. Elbaz, Dr. Hamway, and Dr. Wojciech— Plaintiff's treating physicians—all found various degrees of symptom relief and ability to participate in activities of daily life. (R. at 198–202, 204–05, 213, 215–16.) Their reports include substantial evidence for the ALJ's conclusion that Plaintiff had the residual functional capacity to perform sedentary work.

The ALJ appropriately acknowledged Dr. Elbaz's April 26, 2010 report, which to some extent conflicts with his and Plaintiffs' other doctors' contemporaneous treatment notes. Dr. Elbaz's report limited Plaintiff to standing and/or walking for less than two hours in an eight-hour day, and to sitting for less than four hours in an eight-hour day. (R. at 223.) However, substantial evidence supports the ALJ's finding that Dr. Elbaz's own notes, as well as the other doctors' records, contradicted this report, because those "treating records show that by April 2010 the claimant had reported significant pain relief from pain management treatment." (See R. at 18.)

The Court finds Dr. Elbaz's report to be more persuasive than did the ALJ. Plaintiff's representative, David B. Kennedy, sent this questionnaire to Dr. Elbaz specifically to elicit information about Plaintiff's possible disability, and asked him directly about the maximum weight that Plaintiff could lift and carry, as well as how many hours per day she could stand, walk, and sit. (See R. at 222–23.) By contrast, Dr. Elbaz's contemporaneous treating notes and the other doctors' records

14

provide overall impressions rather than specific estimates of Plaintiff's ability to perform certain activities.

Nonetheless, substantial evidence exists elsewhere in the record to contradict Dr. Elbaz's April report, and the ALJ accordingly relied on substantial evidence to dismiss it. Therefore, this Court "will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); see Alston, 904 F.2d at 126 ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); see also DeChirico, 134 F.3d at 1182–83 (affirming an ALJ decision where substantial evidence supported both sides).

At her May 2011 hearing, Plaintiff testified that she could not perform any physical activity and that she had difficulty walking for more than five minutes. (R. at 16.) She also testified that she suffered from severe lower back pain such that she had to lie down to relieve the pain, and that she did not do any chores, and spent her days reading, watching television, and lying down. (Id.) Plaintiff thus contested that she lacked the residual functional capacity for sedentary work.

However, a claimant cannot demonstrate a disability based entirely on a statement of pain or other symptoms, but rather "must prove physical or mental impairment resulting from abnormalities demonstrable by 'medically acceptable clinical and laboratory techniques.'" Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983) (quoting 42 U.S.C. § 423(d)(3)). In this case, the ALJ—using the six

factors outlined in 20 C.F.R. § 404.1529(c)(3)[4]—was "unpersuaded as to the existence of a disability within the meaning of the Act." Gallagher, 697 F.2d at 84.

Substantial evidence in the record supports the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible." (See R. at 17.) Plaintiff's doctors' assessments consistently acknowledged Plaintiff's subjective claims of pain even while finding her to be capable of daily living activities. (See, e.g., R. at 266.) Of particular relevance, Dr. Hamway noted that Plaintiff had several signs of symptom amplification, and that she had only mild limitations in bending, squatting, lifting, carrying, kneeling, and climbing. (R. at 188.) The ALJ therefore used his discretion appropriately to evaluate Plaintiff's credibility and "arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain" she alleged. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

While the ALJ credited Plaintiff's doctors' statements that she was generally healthy and able to work, the ALJ found that Plaintiff's "significant impairment of the back and knees" did "impose exertional limitations." (R. at 18.) Thus, he concluded that Plaintiff had the residual functional capacity to perform the full range of sedentary work, as defined in 20 C.F.R. 404.1567(a), in an environment

---

[4] "Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c).

that did not involve exposure to irritants.  Substantial evidence exists to support the ALJ's ruling.

3.    Ability to Perform Past Work

The ALJ concluded that Plaintiff was "capable of performing her past relevant work as an administrative assistant," because her work did not "require the performance of work related activities precluded by the claimant's residual functional capacity." (R. at 18.) Substantial evidence exists for the ALJ's finding. Plaintiff stated in her application documents that her past relevant work as an administrative assistant required eight hours of sitting and no standing or walking. (R. at 9, 99.) Based on the ALJ's previous finding that Plaintiff had the residual functional capacity to perform sedentary work, the ALJ also relied on substantial evidence in determining that Plaintiff was capable of performing her work as an administrative assistant.

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is GRANTED.  The Clerk of Court is directed to close the motion at ECF No. 14 and to terminate this action.

SO ORDERED:

Dated:      New York, New York
            October **10**, 2013

                                        _K. B. For_
                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge

17